**FOR PUBLICATION**

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| RIGHTHAVEN LLC,<br>　　　*Plaintiff-Appellant*,<br><br>　　　v.<br><br>WAYNE HOEHN,<br>　　　*Defendant-Appellee*. | No. 11-16751<br><br>D.C. No.<br>2:11-cv-00050-<br>PMP-RJJ |

Appeal from the United States District Court
for the District of Nevada
Philip M. Pro, District Judge, Presiding

| | |
|---|---|
| RIGHTHAVEN LLC,<br>　　　*Plaintiff-Appellant*,<br><br>　　　v.<br><br>THOMAS A. DIBIASE,<br>　　　*Defendant-Appellee*. | No. 11-16776<br><br>D.C. No.<br>2:10-cv-01343-<br>RLH-PAL<br><br>OPINION |

Appeal from the United States District Court
for the District of Nevada
Roger L. Hunt, Senior District Judge, Presiding

Argued and Submitted
February 5, 2013—Pasadena, California

Filed May 9, 2013

Before: Diarmuid F. O'Scannlain, Stephen S. Trott, and Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

## SUMMARY[*]

**Copyright**

The panel affirmed the dismissal for lack of standing of two copyright infringement suits and vacated the portion of the district court's order granting summary judgment on fair use in one of the suits.

The panel held that agreements assigning plaintiff Righthaven LLC the bare right to sue for infringement of newspaper articles, without the transfer of any associated exclusive rights in the articles, did not confer standing to sue. The panel held that the district court therefore lacked jurisdiction to rule in the alternative on the fair use defense.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Erik S. Syverson (argued), Miller Barondess, LLP, Los Angeles, California, and Shawn A. Mangano, Las Vegas, Nevada, for Plaintiff-Appellant.

Kurt Opsahl (argued) and Corynne McSherry, Electronic Frontier Foundation, San Francisco, California; Colleen Bal and Caroline E. Wilson, Wilson Sonsini Goodrich & Rosati, Palo Alto, California, for Defendant-Appellee Thomas A. DiBiase.

Marc J. Randazza (argued), J. Malcolm DeVoy IV, and Jason A. Fischer, Randazza Legal Group, Las Vegas, Nevada, for Defendant-Appellee Wayne Hoehn.

Steven J. Metalitz and J. Matthew Williams, Mitchell Silberberg & Knupp LLP, Washington, D.C., for amici curiae The Association of American Publishers and The Recording Industry Association of America.

**OPINION**

CLIFTON, Circuit Judge:

Abraham Lincoln told a story about a lawyer who tried to establish that a calf had five legs by calling its tail a leg. But the calf had only four legs, Lincoln observed, because calling a tail a leg does not make it so.[1] Before us is a case about a lawyer who tried to establish that a company owned a

---

[1] *See* David Herbert Donald, *Lincoln* 396 (1995).

copyright by drafting a contract calling the company the copyright owner, even though the company lacked the rights associated with copyright ownership. Heeding Lincoln's wisdom, and the requirements of the Copyright Act, we conclude that merely calling someone a copyright owner does not make it so.

Plaintiff Righthaven LLC filed separate copyright infringement suits against defendants Wayne Hoehn and Thomas DiBiase for posting articles from the *Las Vegas Review-Journal* online without authorization. The two cases have been consolidated on appeal. In each of the cases, the district court concluded that Righthaven lacked standing to sue for infringement because it was not the owner of any of the exclusive rights in the news articles required for standing under the Copyright Act and our decision in *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 890 (9th Cir. 2005) (en banc). In *Hoehn*, the district court also held in the alternative that the defendant was covered by a fair use defense, and it granted summary judgment on that ground.

We agree that Righthaven lacks standing in both cases. Because Righthaven lacks standing, we also conclude that we lack jurisdiction to rule on the merits of the fair use claim. Therefore, we affirm the motions to dismiss in both cases, but vacate the portion of the district court order in *Hoehn* granting summary judgment on fair use.

**I.   Background**

Plaintiff Righthaven LLC was founded, according to its charter, to identify copyright infringements on behalf of third parties, receive "limited, revocable assignment[s]" of those copyrights, and then sue the infringers. Righthaven filed

separate suits against defendants Hoehn and DiBiase for displaying copyrighted *Las Vegas Review-Journal* articles without authorization on different websites. Hoehn, who frequently commented in discussion boards at MadJackSports.com, had pasted an opinion piece about public pensions into one of his comments on the site. DiBiase, a former Assistant United States Attorney who maintained a blog about murder cases in which the victim's body was never found, reproduced an article about one of these "no body" cases on his blog.

Righthaven was not the original owner of the copyrights in these articles. Stephens Media LLC, the company that owns the *Las Vegas Review-Journal*, held them at the time defendants posted the articles. After the alleged infringements occurred, but before Righthaven filed these suits, Stephens Media and Righthaven executed a copyright assignment agreement for each article. Each copyright assignment provided that, "subject to [Stephens Media's] rights of reversion," Stephens Media granted to Righthaven "all copyrights requisite to have Righthaven recognized as the copyright owner of the Work for purposes of Righthaven being able to claim ownership as well as the right to seek redress for past, present, and future infringements of the copyright . . .in and to the Work."

Righthaven and Stephens Media had previously entered into a Strategic Alliance Agreement ("SAA"), however, that controlled what Righthaven could do with any copyrights assigned to it. After assignment of a copyright, Righthaven was to search for instances of infringement. When Righthaven found an infringement, it could pursue the infringer, but that right was subject to Stephens Media's veto. If Righthaven did not obtain a settlement or initiate litigation,

it had to reassign the copyright to Stephens Media. Righthaven was required to split any recovery it received with Stephens Media.

The SAA also placed sharp limits on what Righthaven could do with any assigned copyright. Righthaven had no right to exploit the copyrights or participate in any royalties. Stephens Media retained "an exclusive license" to exploit the copyrights "for any lawful purpose whatsoever," and to the extent that Righthaven's pursuit of infringement would "in any manner" diminish Stephens Media's right to exploit the assigned copyrights, Righthaven granted a license to Stephens Media "to the greatest extent permitted by law so that Stephens Media shall have unfettered and exclusive ability" to exploit its copyrights. Moreover, by providing Righthaven thirty days prior notice, Stephens Media could revert the ownership of any assigned copyright back to itself.

After Righthaven filed suit against Hoehn and DiBiase, each defendant filed a motion to dismiss for lack of standing. Righthaven and Stephens Media subsequently executed a "Clarification and Amendment to Strategic Alliance Agreement." The agreement purported to clarify that the parties' intent in entering the SAA was to "convey all ownership rights in and to any identified Work to Righthaven through a Copyright Assignment so that Righthaven would be the rightful owner of the identified Work."

The district court in each case granted defendant's motion to dismiss based on Righthaven's lack of standing. In addition, in the *Hoehn* case, after granting defendant's motion to dismiss, the district court went on to grant defendant's motion for summary judgment on fair use as an alternative basis of decision. Righthaven timely appealed in both cases.

**II. Standing**

In each of the decisions below, the district court held that Righthaven lacked standing to sue for copyright infringement. Reviewing de novo, *see Preminger v. Peake*, 552 F.3d 757, 762 n.3 (9th Cir. 2008), we reach the same conclusion.

Under the Copyright Act, only the "legal or beneficial owner of an exclusive right under a copyright" has standing to sue for infringement of that right. *See* 17 U.S.C. § 501(b); *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 890 (9th Cir. 2005) (en banc) (holding that, under § 501, only a party with an ownership interest has standing to sue). Section 106 of the Copyright Act lists the "exclusive rights" that can be held. They include the right to reproduce the copyrighted work, to prepare derivative works based on the work, and to distribute copies of the work by selling, renting, leasing, or lending. *See* 17 U.S.C. § 106. Absent from the list of exclusive rights is the right to sue for infringement. Accordingly, we held en banc in *Silvers* that the assignment of the bare right to sue for infringement, without the transfer of an associated exclusive right, is impermissible under the Copyright Act and does not confer standing to sue. 402 F.3d at 890. That covers Righthaven, for all it was really assigned was a bare right to sue for infringement.

Righthaven contends that it owns one or more "exclusive rights" under the Copyright Act pursuant to the express language of the assignment contracts, which stated that Righthaven received "all copyrights requisite to have Righthaven recognized as the copyright owner of the Work for purposes of Righthaven being able to claim ownership as well as the right to seek redress for past, present, and future infringements of the copyright . . . in and to the Work." That

some language in the contract described Righthaven as the owner, however, does not itself prove that Righthaven owned any exclusive rights.

When determining whether a contract has transferred exclusive rights, we look not just at the labels parties use but also at the substance and effect of the contract. *See Campbell v. Bd. of Trs. of Leland Stanford Junior Univ.*, 817 F.2d 499, 503–04 (9th Cir. 1987). In *Campbell*, a contract concerning a copyright specifically stated that Stanford, the original owner, remained "the sole and exclusive proprietor" of the copyright. *Id.* at 503. The district court relied on this language to conclude that no copyright interest had been transferred. *Id.* at 503–04. We reversed, concluding that even though Stanford "purport[ed] to retain 'ownership' of the copyrights . . . Stanford clearly transferred part of [its] property interest" to the other party. *Id.* at 504; *see also Nafal v. Carter*, 540 F. Supp. 2d 1128, 1141–43 (C.D. Cal 2007) (looking at the substance of an assignment contract purporting to give plaintiff ownership and concluding that the plaintiff had been assigned only the right to sue), *aff'd*, 388 F. App'x 721 (9th Cir. 2010).

Therefore, that the assignment agreements used language purporting to transfer ownership to Righthaven is not conclusive. We must consider the substance of the transaction. The SAA provided that any copyrights transferred to Righthaven were subject to the terms of the SAA, and many of these terms placed limits on what Righthaven could do with any copyright assigned to it. Those limits lead us to conclude that Righthaven did not actually possess any exclusive rights under the Copyright Act.

The SAA provided that Stephens Media automatically received an exclusive license in any copyrighted work it assigned to Righthaven, so that Stephens Media retained "the unfettered and exclusive ability" to exploit the copyrights. Righthaven, on the other hand, had "no right or license" to exploit the work or participate in any royalties associated with the exploitation of the work. The contracts left Righthaven without any ability to reproduce the works, distribute them, or exploit any other exclusive right under the Copyright Act. *See* 17 U.S.C. § 106. Without any of those rights, Righthaven was left only with the bare right to sue, which is insufficient for standing under the Copyright Act and *Silvers*.

Righthaven makes a number of arguments to avoid this result, but none are persuasive. First, Righthaven argues that the sequence of transactions set forth in the assignment contract and SAA made it the owner of exclusive rights and left Stephens Media as a mere licensee. According to this argument, Righthaven was given full ownership of the contract under the assignment contract. The SAA, in turn, required Righthaven to grant an exclusive license in the copyright to Stephens Media. Righthaven argues that, as a matter of logic, Righthaven could have granted a license to Stephens Media only if ownership first vested in Righthaven.

This argument again emphasizes form over substance. But even analyzing it on its own formalistic terms, the argument still fails because once Righthaven granted Stephens Media an exclusive license, Righthaven was no longer the owner of exclusive rights under the Copyright Act. The Copyright Act does not distinguish between transferring a copyright via an assignment or an exclusive license. Both, unlike an assignment of a non-exclusive license, constitute a "transfer

of copyright ownership." 17 U.S.C. § 101; *see also Campbell*, 817 F.2d at 504 (relying on this section of the Copyright Act to construe a contract as transferring the ownership of a copyright, even though the contract used the term "exclusive license"). It follows that if a copyright owner grants an exclusive license of particular rights, only the exclusive licensee and not the original owner can sue for infringement of those rights. 3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 12.02[C] (2012).

Righthaven also argues that the district court failed to construe the contract in accordance with the "parties' intent to convey all rights necessary . . . for Righthaven to have standing." Under Nevada law, which the SAA provided should govern its interpretation, courts should effectuate the intent of the parties when construing ambiguous contracts. *Sheehan & Sheehan v. Nelson Malley & Co.*, 117 P.3d 219, 223–24 (Nev. 2005). But the contract was not ambiguous. The SAA clearly delineated the respective rights of Righthaven and Stephens Media in any assigned works. Moreover, the contract evinced not just an intent that Righthaven receive whatever rights were necessary for it to sue, but also an intent that Stephens Media retained complete control over all exclusive rights. The problem is not that the district court did not read the contract in accordance with the parties' intent; the problem is that what the parties intended was invalid under the Copyright Act.

Righthaven chastises the district court for not correcting any defect in the agreement, as allowed by the SAA. The SAA provided: "If any provision of this Agreement should be held to be void or unenforceable . . . then such court shall correct the defect . . . to approximate the manifest intent of the Parties." But Righthaven cites no authority suggesting

that the district court had an obligation to reshape its contract. And, as explained above, the parties' intended result was invalid under the Copyright Act and *Silvers*, so reshaping the contract in light of that intent could not have saved it.

Finally, Righthaven argues that it has standing under the amended version of the SAA. After the defendants had each filed a motion to dismiss for lack of standing, Righthaven and Stephens Media executed a "Clarification and Amendment to Strategic Alliance Agreement." The agreement purported to clarify that the parties' intent in entering the SAA was to "convey all ownership rights in and to any identified Work to Righthaven through a Copyright Assignment so that Righthaven would be the rightful owner of the identified Work" and made several substantive amendments to the SAA that applied retroactively to all copyright assignments executed under the original SAA.

In general, jurisdiction is based on facts that exist at the time of filing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992); *see also Keene Corp. v. United States*, 508 U.S. 200, 207–08 (1993) (in affirming a motion to dismiss on jurisdictional grounds, looking at the facts as they existed at the time the complaint was filed, rather than the time of the trial court's ruling on the motion to dismiss as urged by plaintiff). The Supreme Court has enunciated few exceptions to this general principle. *See, e.g.*, *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 837 (1989) (holding that federal courts can dismiss dispensable nondiverse parties to cure jurisdictional defects). So far, permitting standing based on a property interest acquired after filing is not one of them.

We need not decide whether the circumstances of this case call for a new exception to the general rule, however, because Righthaven lacked standing either way. Even under the amended SAA, Righthaven did not possess any exclusive rights. At first blush, the amendments to the SAA appear to have removed the most obvious impediments to Righthaven having standing. The amendments removed the provision explicitly prohibiting Righthaven from exploiting assigned copyrights. In addition, instead of receiving an exclusive license, Stephens Media received a non-exclusive license. But these changes made little practical difference to Righthaven's ability to exploit the copyrights, however, in light of limitations added by the amendments.

For example, under the amended SAA, Righthaven could only exploit a work if it gave Stephens Media thirty days prior notice. And Stephens Media could ensure that Righthaven never actually exploited any assigned copyright, because it retained the unilateral right to repurchase all rights and title back from Righthaven after giving fourteen days notice and paying a nominal sum of ten dollars. Consequently, Righthaven was still unable to exploit any exclusive rights unless Stephens Media permitted it to. Meanwhile, Stephens Media was free to exploit the works to the full extent it wished, and it presumably would with any article that it perceived to have additional value. A hypothetical possibility that Righthaven might be able to exercise exclusive rights if Stephens Media decided to allow it at the time is not sufficient for standing.

Under either the original or amended SAA, Righthaven was not the owner of any exclusive rights under the Copyright Act. It therefore lacked standing to sue for

RIGHTHAVEN LLC V. HOEHN    13

infringement. The motions to dismiss in both *Hoehn* and *DiBiase* were properly granted.

**III.     Fair Use**

In *Hoehn*, after the district court granted defendant's motion to dismiss for lack of subject matter jurisdiction on the ground that Righthaven lacked standing, it went on to grant defendant's motion for summary judgment on fair use, thus providing an alternative basis for decision in favor of defendant. Righthaven argues that, if it lacks standing, then the court has no power to reach the merits of the fair use defense. In that position it is joined by amici curiae The Association of American Publishers and The Recording Industry Association of America. We agree.

The Supreme Court has rejected the "doctrine of hypothetical jurisdiction," in which a federal court assumes jurisdiction for the purpose of reaching the merits, as the practice "carries the courts beyond the bounds of authorized judicial action." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). In *Steel Co.*, after the Court determined that the respondent lacked standing to maintain the suit, it held that the Court and lower courts lacked Article III jurisdiction to reach the merits question and vacated the judgment below. *Id.* at 110.

Hoehn argues that subject matter jurisdiction and standing are separate concepts, and that even if Righthaven lacked standing to sue, the district court still had subject matter jurisdiction over the dispute. The holding in *Steel Co.*, however, pertained to reaching the merits when a court lacked Article III jurisdiction on account of standing, which is precisely the situation in this case. In the absence of standing,

a federal court "lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (citing *Steel Co.*, 523 U.S. at 101). Therefore, absent an exception to the rule in *Steel Co.*, we must vacate the grant of summary judgment below.

We have recognized that "jurisdiction [can be] so intertwined with the merits that its resolution depends on the resolution of the merits." *Orff v. United States*, 358 F.3d 1137, 1150 (9th Cir. 2004) (internal quotation marks omitted), *aff'd*, 545 U.S. 596 (2005). This is not one of those cases. The analysis the district court performed in analyzing the fair use defense—which focused on Hoehn's use of the article, the nature of the article itself, and the market impact of the use—is distinct from the analysis of the assignment contracts that was necessary for determining standing.

We understand why the district court reached the fair use issue. By providing an alternative basis for decision, the court sought to deal with this case in a more efficient manner. If we disagreed with the district court and concluded that Righthaven had standing to bring this copyright infringement action, we could have proceeded directly to the next issue, fair use, without requiring a remand and a further appeal.

Nonetheless, because we agree that Righthaven did not have standing, it is not appropriate for us to go further or for the district court's alternative ruling to stand. We therefore vacate the portion of the district court's order that analyzed the merits of the fair use defense and granted the motion for summary judgment.

### IV.	Conclusion

We affirm the dismissal for lack of standing in both cases. In *Hoehn*, we vacate the portion of the district court's order granting the motion for summary judgment on fair use grounds. Costs are awarded to defendants-appellees.

**AFFIRMED IN PART; VACATED IN PART.**